**Affirmed and Memorandum Opinion filed February 21, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00408-CR

---

### HUMBERTO RUIZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1529289**

---

## M E M O R A N D U M   O P I N I O N

Appellant Humberto Ruiz appeals his conviction for aggravated robbery stemming from the theft of a vehicle using a deadly weapon.[1] Appellant raises three issues, all premised on his claim of ineffective assistance of counsel. Appellant argues counsel was ineffective by failing to request instructions on lesser-included offenses,

---

[1] Tex. Penal Code § 29.03(a)(2).

by failing to move to suppress a pretrial identification of appellant, and by agreeing to a motion in limine preventing reference to the disciplinary history of one of the testifying officers. Concluding appellant has not established the elements required for relief on an ineffective assistance of counsel claim, we affirm.

## BACKGROUND

On the afternoon of September 14, 2016, the complainant, Angel Rojas-Mata, left his place of work at a horse farm around 4:00 p.m. headed to his girlfriend's apartment. On the way, he stopped at his brother's home. Because Rojas-Mata's brother had been drinking and wanted more beer, Rojas-Mata, who does not drink, offered to go to a nearby store to procure the beer. Rojas-Mata travelled in his 2004 blue Toyota Corolla the three to four minutes needed to reach a nearby Mi Tienda and went in to buy the beer.

Realizing he left his wallet in the car, Rojas-Mata returned to his vehicle to retrieve the wallet. As he put his key in the door lock to manually lock the car after getting his wallet, Rojas-Mata felt somebody put a gun on his back near his ribs and heard the words "[j]ust give me the key, or I'm going to shoot you." Rojas-Mata held up the keys and took several steps away from the person holding the gun. While giving the person holding the gun his keys, Rojas-Mata saw the person's face. The person holding the gun was wearing a black shirt, black shorts, and a black cap, and had facial hair and tattoos on his neck. Rojas-Mata could see an H and 28 on the person's neck, but the rest of the tattoo was covered by the person's clothing. Because the person was wearing a cap, Rojas-Mata could not see any tattoos on the person's forehead. The person held what looked like a semi-automatic pistol, with a black grip and silver barrel.

After the person took off with the car, Rojas-Mata began walking back to his brother's apartment because his phone was out of power. He did not think to use the

phone at Mi Tienda to call the police, and instead returned to his brother's home to charge the battery. After calling the police, Rojas-Mata returned to Mi Tienda, but after waiting an hour, Rojas-Mata called his girlfriend to take him home. A police officer later called him from Mi Tienda and told Rojas-Mata he would need to file a police report. Rojas-Mata had to work the following morning at 7:00 a.m. and planned to file the report when he got off work at 4:00 p.m.

The following day Rojas-Mata prepared to leave work. As part of his duties, he had to close a gate that fronted Gaines Road and, as he was doing so, a car drove by that Rojas-Mata recognized as his stolen vehicle. Rojas-Mata had another vehicle at the farm and quickly used it to follow the stolen one. He followed his stolen vehicle to a gas station not far from the farm. From a distance, Rojas-Mata observed the vehicle and saw two people in the car—a person sitting in the front passenger seat and the person who took the vehicle from him at gunpoint sitting in the driver's side. Rojas-Mata called 911, but when the vehicle left the gas station before police could arrive, Rojas-Mata followed it and saw it travel into a nearby neighborhood. He lost sight of the car at that point and returned to the gas station to wait for police.

After speaking with police at the gas station, Rojas-Mata drove to the nearby neighborhood and saw his stolen vehicle parked in front of one of the houses. He again called police and reported the location of the car. While on the phone with a police officer, Rojas-Mata saw appellant get into the driver's side and another person (later identified as José Perez) get into the passenger side of the vehicle and drive away. He provided the officer with the direction and followed his stolen vehicle from a distance. Rojas-Mata briefly lost sight of the vehicle but came upon it as police officers pulled the stolen vehicle over. Rojas-Mata gave a statement at the scene of the traffic stop and while doing so saw appellant sitting in the patrol car from a distance. Officer E. Garza took the statement and testified that appellant seemed scared. Garza did not

3

realize that Rojas-Mata could see appellant in the patrol car.

Approximately a week after his vehicle was stolen, Rojas-Mata met again with police, where they showed him two photo arrays. The officer used a blind administrator to compile the arrays.[2] In the first photo array, police used a picture of appellant showing more facial hair than appellant had at the time of his arrest and his tattoos were not visible. Rojas-Mata identified appellant as the person who took his vehicle at gunpoint. In the second array, which contained a picture of passenger Perez, Rojas-Mata could not identify anyone.

At trial, the State showed Rojas-Mata a picture of appellant at the time of his arrest. The picture reflected a tattoo on appellant's neck with, among other things, an H in the center of a star and the numbers 281. He also had tattoo writing on his upper forehead. Rojas-Mata identified appellant in the picture as the person who took his car at gunpoint and identified appellant in the courtroom. He was 100 percent certain appellant was the person who committed the robbery.

Appellant presented testimony from Belem Villanueva, a friend of the passenger Perez. Villanueva stated that she saw Perez driving the stolen vehicle two or three days before the arrest and when she asked Perez where he got the car, Perez said he took it from a guy and punched him because the guy owed Perez money for drugs.

The trial court instructed the jury regarding the law of aggravated robbery. Appellant's counsel did not request any additional jury instructions and did not object to the court's charge. The jury returned a verdict of guilty. This appeal followed.

---

[2] A blind administrator is a police officer with no knowledge of the case who takes photos to be used in a photo spread and shuffles them for use by an investigator. Police use blind administrators in compiling photo arrays so that the investigating officer does not know the suspect's location in the array and thus cannot inadvertently give cues or facial expressions that could suggest to the witness whom to identify.

ANALYSIS

In his first issue, appellant argues he received ineffective assistance of counsel because his attorney did not request the submission of the lesser-included offenses of unauthorized use of a motor vehicle, theft, or robbery. In his second issue, appellant argues his counsel rendered ineffective assistance because he did not move to suppress Rojas-Mata's pre-trial identification of him as the perpetrator, arguing the earlier "de facto show-up" identification from the gas station tainted all subsequent identifications. In his third issue, appellant argues his counsel was ineffective by agreeing to a motion in limine preventing reference to the disciplinary history of Garza. We address each issue in turn.

## I.     Standards of review for ineffective assistance of counsel claims

An accused is guaranteed the right to assistance of counsel under both the United States Constitution and the Texas Constitution. U.S. Const. amend. VI; Tex. Const. art. 1, § 10; *McCurdy v. State*, 550 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2018, no pet.). This right to counsel includes the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *Ex Parte Jimenez*, 364 S.W.3d 866, 882–83 (Tex. Crim. App. 2012). In assessing claims of ineffective assistance, we apply the two-prong test set forth in *Strickland*. *Jimenez*, 364 S.W.3d at 883. The *Strickland* test requires the defendant to prove, by a preponderance of the evidence, that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Jimenez*, 364 S.W.3d at 883.

Courts indulge a strong presumption that trial counsel's actions fell within the wide range of reasonable professional behavior and sound trial strategy. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citing *Thompson v. State*, 9 S.W.3d 808,

813 (Tex. Crim. App. 1999)). To defeat this presumption, a defendant must show ineffectiveness firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Prine*, 537 S.W.3d at 117; *McCurdy*, 550 S.W.3d at 339. If, as in most direct appeals, the record is undeveloped, counsel will be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it. *See Prine*, 537 S.W.3d at 117; *McCurdy*, 550 S.W.3d at 339 ("In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." (internal quotation marks omitted)).

Conscious decisions not to pursue defenses or object to evidence are not insulated from review, and they are typically based on trial strategy. *See McCurdy*, 550 S.W.3d at 339. Strategic decisions typically require courts to evaluate counsel's reasons for making the decision, thus requiring a developed record in most cases. *Id.* "The record on direct appeal is generally insufficient to show that counsel's performance was deficient." *Prine*, 537 S.W.3d at 117; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

## A.    The lesser-included offenses

Appellant argues that unauthorized use of a motor vehicle, theft, and robbery are all lesser-included offenses of aggravated robbery that should have been requested by trial counsel. To demonstrate ineffective assistance of counsel based on a failure to request jury instructions, appellant must first show he was entitled to the instructions. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999); *Washington v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). To be entitled to a lesser-included offense instruction, an appellant must establish two elements: (1) the lesser-included offense is included within the proof necessary to establish the charged offense; and (2) there is evidence in the record that would permit

a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser-included offense. *See Wortham v. State*, 412 S.W.3d 552, 554–58 (Tex. Crim. App. 2013); *Ramirez v. State*, 422 S.W.3d 898, 900 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The evidence of the lesser-included offense must consist of affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Wortham*, 412 S.W.3d at 558. Although the threshold for presenting evidence of the lesser-included offense is low, it is not sufficient that the jury may simply disbelieve crucial evidence pertaining to the greater offense. *See Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011).

Appellant is correct that unauthorized use of a motor vehicle, theft, and robbery may be considered lesser-included offenses of aggravated robbery. *See Teague v. State*, 789 S.W.2d 380, 382 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). Appellant, however, has not met his burden to establish trial counsel was deficient in failing to request the instructions.

The evidence did not support theft and robbery submissions because there was no evidence from which a jury could rationally find appellant guilty of only those offenses. A jury instruction on the lesser-included offense of theft requires evidence of the value of the property taken. *Ramirez*, 422 S.W.3d at 901 ("Under Texas law, the value of the property taken is an essential element of the offense."). There was no evidence presented at trial regarding the value of Rojas-Mata's stolen vehicle. Thus, the trial court would not have erred in refusing to submit a theft instruction. *Id.* Likewise, there was no evidence to support a theft or robbery instruction because the evidence was undisputed that a gun was used to place Rojas-Mata in fear of imminent bodily injury or death as his vehicle was stolen. To be entitled to an instruction on theft or robbery, appellant had to identify affirmative evidence that a deadly weapon was not used. *See Penaloza v. State*, 349 S.W.3d 709, 713 (Tex. App.—Houston [14th Dist.]

7

2011, pet. ref'd) ("Because the record does not contain affirmative evidence that a deadly weapon was not used, we conclude that the trial court did not abuse its discretion in refusing to submit a charge on robbery."); *cf. Sweed*, 351 S.W.3d at 69 (holding lesser-included offense of theft was warranted because there was a fact issue concerning whether use of knife occurred in course of or in immediate flight from theft). Trial counsel cannot be declared deficient for failing to request instructions on lesser-included offenses to which the defendant was not entitled. *See Fuentes*, 991 S.W.2d at 272; *Washington*, 417 S.W.3d at 726.

Further, assuming without deciding that unauthorized use of a motor vehicle was raised by testimony from Villanueva that the passenger Perez told her he took the vehicle from someone who owed him money for drugs, the record is silent as to trial counsel's strategy in failing to request the instruction. Trial counsel may have chosen not to request the lesser-included offense because he believed that the evidence of alleged misidentification of appellant as the person who took the vehicle was so strong that the jury would acquit appellant of the charged offense. "[I]t is a reasonable trial strategy to decide to not request a charge on a lesser included offense." *Washington*, 417 S.W.3d at 726; *see also Ex Parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (holding counsel not ineffective for failure to request lesser-included offense because all-or-nothing approach was strategy decision). Because the decision not to request the lesser-included offense may have been strategic and the record is silent as to counsel's reasons, appellant failed to show deficient performance. *See Washington*, 417 S.W.3d at 726.

We overrule appellant's first issue.

## B. The failure to file a motion to suppress

Appellant argues in his second issue that trial counsel was ineffective by failing to suppress Rojas-Mata's out-of-court identification of him as the person who stole his

vehicle at gunpoint. A trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.— Houston [14th Dist.] 2012, no pet.). To prove ineffective assistance of counsel for failing to move to suppress evidence, appellant is required to show that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (per curiam) (to satisfy *Strickland* appellant is obliged to prove that motion to suppress would have been granted); *Wert*, 383 S.W.3d at 753.

Appellant argues that identification of the perpetrator was the focus of the defense theory and that counsel should therefore have tried to suppress the pre-trial identification by Rojas-Mata. According to appellant, when Rojas-Mata saw appellant driving his car at the gas station and when police pulled him over, it amounted to an impermissibly suggestive "de-facto show-up" identification that tainted all subsequent identifications. Appellant does not complain of or point to any police action, nor does he complain of the photo array presented to Rojas-Mata. Instead, appellant relies on the fact that Rojas-Mata, acting on his own, saw appellant driving his car, which appellant argues impermissibly suggested to Rojas-Mata that appellant was the person who took his vehicle. Even assuming for purposes of argument that appellant is correct in describing Rojas-Mata's viewing of appellant driving his car as a "de-facto show-up" identification, the trial court would not be required to grant a motion to suppress the identification.

In *Perry v. New Hampshire*, the United States Supreme Court held that the Due Process Clause does not require preliminary judicial inquiry into the reliability of an identification when "the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." 565 U.S. 228, 248 (2012). The Court acknowledged that eyewitness identification is fallible and can result in

misidentification but reiterated that other safeguards are in place to protect the fairness of criminal trials. *Id.* at 246–48. Those safeguards include state and federal rules of evidence allowing trial courts to exclude unduly prejudicial or misleading evidence, as well as cross-examination and jury argument exposing the unreliability of the testimony.[3] *Id.* Because no law enforcement conduct arranged the show-up identification of appellant, the trial court would not have been required to conduct a preliminary inquiry into the reliability of the identification. *See id.* at 248.

Nor would the trial court have been required to grant a motion to suppress the pretrial identification of appellant had one been filed. While certain show-up identifications can be impermissibly suggestive, that fact alone does not require exclusion. Instead, courts must also determine whether, under the totality of the circumstances, the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Balderas v. State*, 517 S.W.3d 756, 795–96 (Tex. Crim. App. 2016) (noting that courts consider factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), in assessing the likelihood of misidentification); *Kelley v. State*, 525 S.W.3d 275, 280 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). In this case, there was no substantial likelihood of misidentification. Rojas-Mata testified that he saw appellant's face when he handed the vehicle keys to him and that appellant had tattoos on his neck of an H and 28, which he could see only if he was close to appellant. Rojas-Mata picked appellant out in the photo array without hesitation approximately a week after the robbery and stated at trial that he was 100 percent certain appellant is the person who took his vehicle while pointing a gun at him at Mi Tienda. Appellant

---

[3] Appellant's trial counsel in fact cross-examined Rojas-Mata regarding his identification and argued extensively in closing that Rojas-Mata's sighting of appellant driving his car at the gas station cast doubt on his identification as the perpetrator. Counsel argued that, because Rojas-Mata saw appellant driving the car the next day and when he saw appellant get out of the car at the traffic stop, his mind would "close the gap" and think "that's the guy." Counsel also argued that Perez was the one who took the car instead of appellant, based on Villanueva's testimony.

does not complain about the identification using the photo arrays. Considering the totality of the circumstances, the trial court would not have erred in denying a motion to suppress. *See Kelley*, 525 S.W.3d at 281.

Because appellant has not shown trial counsel was deficient for failing to file a motion to suppress, appellant has not established ineffective assistance of counsel. We overrule appellant's second issue.

## C. The agreed motion in limine

In his third issue, appellant contends his trial counsel was ineffective for agreeing to the State's motion in limine, which prevented the parties from referencing a disciplinary record of Garza. The order granting the motion in limine prevented any reference to conduct leading to a 15-day suspension of Garza "for violation of the HPD rules and regulations regarding Conduct and Authority – Use of Discretion and Sound Judgment, Knowledge of and Obedience to Laws and Rules, and HPD Badges, Identification Cards, and Challenge Coins." Appellant argues the evidence would have been relevant to support a claim regarding disregard for proper identification procedures and that counsel was ineffective by failing to impeach Garza's credibility.

We addressed a similar complaint in *Ray v. State*, where we held that appellant failed to show ineffective assistance of counsel based on trial counsel's agreement to a motion in limine preventing reference to officers' disciplinary records or personnel files.[4] No. 14-14-00347-CR, 2015 WL 4366108, at **4-5 (Tex. App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op., not designated for publication). We concluded that appellant could not demonstrate his counsel was deficient because the record did not reflect what information was contained in the officers' files nor the circumstances

---

[4] We acknowledge that *Ray* has no precedential value as an unpublished decision, but the similar facts make the case instructive. *See Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013).

11

surrounding the suspension of one of the officers. *Id.* at \*5. Likewise, the record in this case does not include the disciplinary records or demonstrate the circumstances surrounding Garza's receipt of the violation and suspension. Nor does the record disclose whether appellant's trial counsel viewed the disciplinary materials and determined they were not relevant or admissible for purposes of impeaching Garza. *See generally* Tex. R. Evid. 608(b) (barring evidence of specific instances of witness's conduct in order to attack character for truthfulness except for criminal conviction under rule 609). It is possible the violation had nothing to do with pretrial identification procedures. The record must affirmatively demonstrate ineffectiveness. *See Thompson*, 9 S.W.3d at 813. The record here does not demonstrate that counsel's agreement to the motion in limine was so outrageous that no reasonable attorney would have done the same. Without a more fully developed record, we cannot conclude trial counsel was deficient. *See Prine*, 537 S.W.3d at 118; *Bone*, 77 S.W.3d at 835 ("Ineffective assistance of counsel claims are not built on retrospective speculation; they must be firmly founded in the record." (internal quotation marks omitted)); *McCurdy*, 550 S.W.3d at 339.

Appellant argues that our decision in *Ray* is distinguishable because in that case trial counsel attacked the credibility of the officer in his closing argument and in this case trial counsel should have done the same. We disagree. Although trial counsel did not attack Garza's credibility in his closing, he did attack the credibility of the pretrial identification based on the fact that Rojas-Mata saw appellant at the traffic stop while giving his report to Garza. Trial counsel could have concluded that delving into Garza's disciplinary history was not necessary for purposes of attacking the pretrial identification procedure because the evidence already allowed him to make the argument. *See supra* note 3. Further, Garza testified only briefly and only regarding Rojas-Mata's display of fear while giving his statement. Counsel could have

12

determined it was not necessary to impeach Garza's credibility regarding Rojas-Mata's fearful state. Given the silent record on trial counsel's strategy of attacking the identification through his closing argument rather than through Garza's disciplinary record, we cannot conclude that the decision was so outrageous as to amount to ineffective assistance of counsel. *See Prine*, 537 S.W.3d at 118. We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's three issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Zimmerer, and Spain.
Do Not Publish — TEX. R. APP. P. 47.2(b).