Yancy KELLEY, Appellant

v.

The STATE of Texas, Appellee

NO. 14-15-00979-CR

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed March 23, 2017.

Discretionary Review Refused
May 24, 2017.

Kyle Reeves Sampson, Houston, TX, for Appellant.

Molly Wurzer, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Boyce and Christopher.

## OPINION

Kem Thompson Frost, Chief Justice

Appellant Yancy Kelley challenges his conviction for robbery, asserting (1) ineffective assistance of counsel for failing to object to evidence, and (2) trial-court error in admitting evidence of the complainant's pretrial identification of appellant. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant, Junie Treminio, was walking to a bus stop when she encountered a man who grabbed her necklace and attempted to take her purse. A struggle ensued, and the assailant threw the complainant to the ground. When the complainant's purse flew off of her arm, the assailant took the complainant's wallet and fled.

A neighborhood resident heard the complainant screaming and ran out of his home in time to see a man running away from the bus stop. When the resident saw the man get into a blue car, he wrote down the license plate number. The complainant

told 911 operators that her attacker was a black male wearing a black t-shirt and gray shorts. She stated that a witness saw the attacker leave the scene in a blue Nissan Altima with license plate FJP8227.

About a week later, Eric Garza, a police officer on patrol, was randomly running license plates of vehicles to see whether any of the plates returned "hits" in the police computer system. Officer Garza entered the plate of a blue Nissan Altima with license-plate number FJP8227. Officer Garza then stopped the car and arrested appellant, who was seated on the passenger side.

Detective John Bedingfield interviewed appellant at the police station. In the videotaped interview, appellant denied responsibility for the robbery. Appellant then invoked his right to counsel.

Detective Bedingfield created a photo spread that contained a photo of appellant. He showed the photo spread to the complainant, and she identified appellant as the man who attacked her.

Appellant was charged with robbery and an enhancement based on a prior felony conviction for burglary of a habitation. A jury found appellant guilty as charged and found the alleged enhancement to be true. The trial court assessed punishment at ten years' confinement. Appellant now challenges his conviction, raising two issues.

## II. ISSUES AND ANALYSIS

**A. Was trial counsel ineffective in failing to object to appellant's videotaped statement?**

■ In his first issue, appellant asserts that trial counsel provided ineffective assistance because trial counsel did not object at trial to the State playing appellant's videotaped statement to Detective Bedingfield. Appellant contends that the statement was inadmissible because it was a custodial statement in which appellant invoked his right to remain silent and to have an attorney to represent him.

■ To prevail on an ineffective-assistance-of-counsel claim, an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the first prong, an appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* An appellant must overcome the presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). To satisfy the second prong, the appellant must show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). The appellant must do more than show, with the benefit of hindsight, that his counsel's actions or omissions during the trial were merely of questionable competence. *Huerta v. State*, 359 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

On the morning of trial, trial counsel asked to make a record to document his difficulty communicating with appellant in connection with counsel's efforts to prepare for trial. The trial court had ordered appellant to meet with trial counsel to prepare for trial and had made meeting with trial counsel a condition of appellant's

bond. Appellant attended that meeting, but then communication stopped. Trial counsel could not make contact with appellant for a period of six to eight weeks. Trial counsel asked an investigator to attempt to get in touch with appellant or appellant's girlfriend. Neither the investigator nor trial counsel were successful in their efforts to make contact with appellant. That meant trial counsel had to prepare for trial without appellant's assistance or input.

At trial, when the State offered into evidence the video of appellant's statement (State's Exhibit 11), trial counsel stated on the record that trial counsel chose not to object because the video did not contain any inculpating statements and showed appellant denying involvement in the robbery. The video—a recording of Detective Bedingfield questioning appellant after appellant's arrest—runs about seven minutes. In the video, appellant states that his daughter's mother owns a dark blue Nissan Altima. Detective Bedingfield responds that a week earlier, someone saw appellant get into that car. Appellant denies it. Appellant then states that he needs an attorney because he does not know what is going on. He states that he thought he had been pulled over and arrested because he had outstanding traffic tickets and states that he is confused by Detective Bedingfield's line of questioning about another crime involving an Altima. Appellant tells Detective Bedingfield, "I'm just being straight with you, if I'd actually done something, sir, I got four kids, if I did something, there's no reason for me to be here playing with you." Detective Bedingfield then states that someone used the lady's credit card and he has video. Appellant says the person could not have been him. Appellant then invokes his right to an attorney, ending the interview.

Trial counsel stated on the record that he did not expect appellant to testify based on trial counsel's advice that testifying would subject appellant to cross-examination about prior convictions, which trial counsel advised could lead to appellant's conviction. Because trial counsel expected appellant not to testify, trial counsel wanted the jury to hear appellant deny his involvement in the robbery and so, for strategic reasons, chose not to object to appellant's videotaped statement. Appellant later decided to testify, against counsel's advice.

Appellant argues that there is no reasonable trial strategy supporting trial counsel's decision not to object to the video statement. According to appellant, the jury "witnessed an awful statement by [appellant] where he made no specific denial," where appellant "looks and sounds guilty." Appellant notes that several times the jury heard appellant invoke his Fifth Amendment right to remain silent. The record shows that before trial, trial counsel attempted to meet with appellant to discuss trial strategy and that trial counsel advised appellant not to testify at trial. Under these circumstances, counsel cannot be faulted for failing to anticipate that appellant would ignore trial counsel's advice and testify.

At the time the State offered the videotape (State's Exhibit 11) into evidence, trial counsel had valid, strategic reasons for wanting the jury to see the video and hear appellant's denial of involvement. *See Jackson v. State*, 495 S.W.3d 398, 417 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding appellant did not overcome presumption that counsel performed reasonably). Though the video shows appellant invoking his Fifth Amendment rights, it also shows appellant explaining that he was confused about what was going on. Appellant stated that he could not have been the individual on video using the complainant's credit card. And, appellant

stated that he had not done anything wrong, other than potentially failing to pay outstanding traffic tickets. Having reviewed the video and the circumstances of trial, we conclude that trial counsel did not render ineffective assistance by not objecting to this evidence. *See Cummings v. State*, 401 S.W.3d 127, 132–33 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We overrule appellant's first issue.

**B. Did appellant preserve error on his complaint about the in-court identification?**

In his second issue, appellant asserts that the trial court erred by admitting evidence of a pretrial identification and allowing the complainant to make an in-court identification. Appellant argues that this evidence was inadmissible because the pretrial identification was impermissibly suggestive and it tainted the in-court identification. The State asserts that appellant failed to preserve error on his claim that the in-court identification was tainted by the impermissible pretrial identification.

■ If a defendant fails to raise a complaint about the admissibility of an in-court identification of the defendant before the testimony is elicited, the defendant waives any such complaint unless the defendant establishes on the record why the failure to complain or object should be excused. *See Perry v. State*, 703 S.W.2d 668, 671–73 (Tex. Crim. App. 1986). Appellant asserts that he was not required to object to the in-court identification because he did not know it was tainted until the complainant's later testimony about the pretrial identification procedure. Appellant did not object to, or move to strike, or voice any complaint about the in-court-identification evidence at any point in the trial court, including after the complainant's later testimony about the pretrial identification procedure. Nor did appellant establish on the record why his failure to complain or object should be excused. We thus conclude appellant waived his appellate complaint regarding the admission of the in-court-identification evidence by failing to preserve error in the trial court. *See id.*

**C. Did the trial court err in admitting evidence of a pretrial identification that was impermissibly suggestive?**

Under his second issue, appellant asserts that the trial court erred in admitting evidence of the complainant's pretrial identification of appellant because the pretrial identification procedure was impermissibly suggestive and created a very substantial likelihood of irreparable misidentification. In the trial court the only complaint regarding identification that appellant asserted was an objection that he lodged when the State offered into evidence State's Exhibit 8, which contained written admonishments, a six-person photo array, and handwritten notations that the complainant had identified the person in position number one. Appellant objected to the admission of this evidence on the ground that the officers did not follow the requirements for showing a photo array to a witness because they are not supposed to tell the witness that the person who committed the offense is definitely in the photo array. Noting the complainant was told that the person who committed the offense was in the photo array, appellant asserted that the relevance of State's Exhibit 8 was severely diminished and the evidence should be excluded. Appellant did not object that State's Exhibit 8 or the pretrial identification procedure shown therein was impermissibly suggestive or that it created a very substantial likelihood of irreparable misidentification.

■ Even so, we presume for the sake of argument that appellant preserved error on a complaint that the pretrial identi-

fication described in State's Exhibit 8 was impermissibly suggestive and created a very substantial likelihood of irreparable misidentification because the complainant was told that the person who committed the offense was definitely in the photo array. Appellant has not established on the record why his failure to complain about any other aspect of the pretrial identification procedure should be excused. To the extent, appellant asserts on appeal that the pretrial identification described in State's Exhibit 8 was impermissibly suggestive and created a very substantial likelihood of irreparable misidentification based on some other reason, appellant failed to preserve error in the trial court. *See Perry,* 703 S.W.2d at 671–73.

Generally, the United States Constitution protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting its introduction, but by affording the defendant the means to persuade the jury that the evidence should be discounted as unworthy of credit. *Balderas v. State,* No. AP-77, 517 S.W.3d 756, 791–92, 2016 WL 6496715, at *25 (Tex. Crim. App. Nov. 2, 2016). The Due Process Clause bars the admission of identification evidence only when the introduction of such evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Id.* (quoting *Perry v. New Hampshire,* 565 U.S. 228, 237, 132 S.Ct. 716, 723, 181 L.Ed.2d 694 (2012)) (internal quotations omitted). The defendant has the burden to establish by clear and convincing evidence that the pretrial procedure was impermissibly suggestive based on the totality of the circumstances. *Id.* A pretrial procedure may be suggestive, but that does not necessarily mean it is impermissibly so. *McLendon v.*

*State,* 167 S.W.3d 503, 513 (Tex. Crim. App. 2005). Further, an unnecessarily suggestive pretrial identification procedure does not, in itself, intrude upon a constitutionally protected interest. *Balderas,* 517 S.W.3d at 791–92, 2016 WL 6496715, at *25. If the court determines that a pretrial identification procedure was impermissibly suggestive, the court then determines whether, under the totality of the circumstances, the impermissibly suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Id.,* 517 S.W.3d at 791–92, 796–97, 2016 WL 6496715, at *25, 29.

At trial, the complainant identified appellant in court as her attacker. The complainant testified that about a week after the robbery a detective asked her to look at some pictures and that he explained why he wanted the complainant to look at the pictures. The complainant testified that she understood that she was looking at the pictures because "they had caught the guy and they wanted me to identify him." The complainant testified that she looked at the pictures and recognized the person who had attacked her in "less than a second" because she will never forget his face. The complainant agreed that the officers told her that "the person was for sure in the photographs" that she was examining. The complainant also agreed that "he said that the person we caught is definitely in these photographs."

The State offered into evidence State's Exhibit 8 containing written admonishments,[1] a six-person photo array, and handwritten notations that the complainant had identified person number one. Appellant objected to the admission of this evidence on the ground that the officers did not follow the requirements for show-

---

1. The written admonishments included a statement that the individual who committed the offense may or may not be present.

ing a photo array to a witness because they told the complainant that the person who committed the offense is definitely in the photo array.

 The record does not contain any evidence that Detective Bedingfield or another police officer suggested that the complainant pick out a particular photo from the array or indicated in any way which of the photos in the array was of the apprehended suspect or the man who had robbed the complainant. Presuming that the police officers told the complainant before the pretrial identification that they had apprehended the man who robbed the complainant and that his picture was one of the pictures in the array, and presuming the complainant believed these statements, these facts alone would not make the pretrial identification procedure impermissibly suggestive. *See Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992) (holding that statement by police to witness that the lineup contained a suspect did not make the pretrial identification procedure impermissibly suggestive because a witness normally would presume that to be the case); *Webb v. State*, 760 S.W.2d 263, 270–72 (Tex. Crim. App. 1988) (concluding that pretrial lineup was not impermissibly suggestive even if the witness learned before the lineup that police had apprehended a man in possession of the pistol that had been used in the murder in question and that this man would be in the lineup); *McLendon*, 167 S.W.3d at 513 (stating that the witness's belief at the time of the lineup that one of the people in the lineup is a suspect does not make the pretrial identification procedure impermissibly suggestive). Appellant did not complain in the trial court regarding any other aspects of the pretrial identification procedure. We overrule the second issue.

### III. Conclusion

Appellant does not prevail on his first issue because trial counsel did not provide ineffective assistance by failing to object to the videotape of appellant's interview. Appellant does not prevail on his second issue because the trial court did not err in overruling appellant's objection to the admission of State's Exhibit 8, and appellant did not preserve error as to any of his other complaints under the second issue. Having overruled all of appellant's issues, we affirm the trial court's judgment.