**Affirmed and Opinion filed July 27, 2017.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-16-00817-CR

**SHAUN ADRIAN JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1495747**

## O P I N I O N

A jury found Shaun Adrian Jackson guilty of evading arrest with a motor vehicle. *See* Tex. Penal Code § 38.04(b)(2)(A) (West 2016). On appeal, he acknowledges the State proved all elements of the charged offense beyond a reasonable doubt except, he contends, the State did not present legally sufficient evidence that he was the driver. We conclude the evidence of appellant's identity as the driver is legally sufficient and affirm the judgment.

## Factual Background

The following facts are based on the guilt/innocence phase trial evidence, viewed in the light most favorable to the jury's verdict.

***The evasion and pursuit.*** Deputy Constable David Vest sat in his marked patrol car in a school zone on Studewood Street shortly before 8:00 a.m. on a school day. He saw a small, blue, hatchback Mazda speed through the school zone. The windows were not tinted. Vest could see a driver and a passenger in the front seat. Vest immediately began pursuit and activated his patrol car's emergency lights, which automatically activated the car's dashboard video recorder, also known as a dash cam.

As his patrol car approached the rear of the Mazda, Vest, using his speaker, verbally directed the Mazda's driver to pull over. The Mazda's right turn signal began to flash, indicating the driver would turn right onto a nearby side street. However, instead of turning right, the driver suddenly sped away on Studewood.

Vest sounded his car's siren and followed the Mazda for several miles on crowded city streets and eventually onto Interstate 10. The Mazda weaved through traffic at a high rate of speed, violating several traffic laws as the driver sped through red lights and drove into oncoming traffic lanes. During the pursuit, Vest could see that a man was driving. He also saw a female passenger hop back and forth between the front seat and the back seat several times.

Heavy morning traffic on Interstate 10 forced the Mazda to slow, allowing Vest to catch up. The Mazda was one lane left of the patrol car, so Vest moved forward just enough to angle the patrol car to the left in order to block the Mazda. The driver's side of the patrol car was near the front part of the Mazda. The Mazda's driver then, in Vest's words, "rammed" the middle of the patrol car's driver's side

2

with the right front area of the Mazda. Vest could see the Mazda driver's face at the time of the collision, and he made eye contact with the driver. At trial, Vest identified appellant as the Mazda's driver. He testified that he considers himself an above-average eyewitness due to his police training.

On cross-examination, Vest acknowledged the call log for the incident, which was based in part on Vest's broadcast statements over his radio as the pursuit occurred, indicated the Mazda's two occupants were Hispanic, whereas appellant is African-American and the female occupant is caucasian. Vest said it is possible he broadcast the wrong information due to his adrenaline pumping during the pursuit, but it is also possible the person inputting information into the call log did so incorrectly.

Vest pursued the Mazda on Interstate 10 for a short time after the collision. However, he ended the pursuit at 8:03 a.m. for public safety concerns without stopping the Mazda.

*After the pursuit.* At approximately the same time, local business owner John Graham was in his office at a manufacturing facility not far from where Vest ended the pursuit. Graham testified that a car drove onto the property at around 7:00 a.m. or 8:00 a.m. Graham investigated and saw a small, blue, "relatively new" hatchback about twenty feet away from his office. The car was damaged on the front passenger side. Graham saw a woman take bags of clothes and other items out of the backseat. Graham also saw a man emerge from the driver's seat and walk toward the trunk. Graham, who was standing near the rear of the car, got a "good look" at the man as he walked to the trunk. The man and the woman then ran away from the facility, leaving the car. Graham called 911 and reported the incident.

At trial, Graham identified appellant as the man he saw. He was confident in his identification for two reasons. First, Graham was inches away from the man's

face as the man walked to the trunk after exiting the driver's seat. Second, nothing like that had happened in the twenty-three years Graham had worked at that facility, a "very obscure little place" where "[n]othing happens," so the details of the event stood out in his mind.

***Apprehension and identification of appellant.*** Law enforcement officers arrived at Graham's facility approximately ten minutes after Graham reported the incident. Within the next fifteen to twenty minutes, officers found appellant and his female companion hiding under a house on Elysian Street, somewhere between a quarter of a mile and a mile away from Graham's facility. The officers brought appellant and the female to Graham's facility for identification. Graham identified appellant and the woman as the people he saw leaving the car minutes earlier.

Around 4:30 that afternoon, Vest went to the constable's station where appellant and the woman had been transported. Vest identified appellant as the driver of the Mazda involved in the pursuit that morning.

## Analysis

### A.    Issue Presented and Standard of Review

In a single issue, appellant argues that there is legally insufficient evidence that he was the Mazda's driver as charged in the indictment.

We apply a legal-sufficiency standard of review in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a

4

reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We consider all evidence in the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Circumstantial evidence is direct proof of a secondary fact that, through logical inference, demonstrates an ultimate fact to be proven. *Rivera-Reyes v. State*, 252 S.W.3d 781, 787 n.3 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Circumstantial evidence is as probative as direct evidence in establishing the guilt of the alleged actor, and circumstantial evidence alone can be sufficient to prove guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The same standard of review is used for both circumstantial and direct evidence. *Id.* "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.*

Although we consider all evidence presented at trial, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The jury alone decides whether to believe eyewitness testimony. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Bradley v. State*, 359 S.W.3d 912,

917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Because the jury is the sole judge of the witnesses' credibility and of the weight given their testimony, we resolve any evidentiary conflicts or inconsistencies in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The testimony of a single eyewitness can be enough to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Price*, 502 S.W.3d at 281; *Bradley*, 359 S.W.3d at 917.

**B.    The Evidence is Sufficient to Prove Appellant Evaded Arrest**

A person commits the offense of evading arrest with a motor vehicle if he, while using a vehicle, intentionally flees from a person he knows to be a peace officer attempting lawfully to arrest or detain him. Tex. Penal Code § 38.04; *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Appellant's sole challenge is to the legal sufficiency of the evidence that he was the Mazda's driver.

As Vest testified, he observed the Mazda's two occupants, a man and a woman. The woman hopped back and forth between the front passenger seat and the back seat. When Vest tried to block the Mazda with his patrol car, the Mazda's front passenger side rammed into the middle of the patrol car's driver's side. At that moment, Vest made eye contact with the male driver and saw his face. Even assuming Vest may have broadcast incorrect information as the high-speed pursuit developed, Vest was confident he observed the driver sufficiently to identify appellant as the driver.

Circumstantial evidence a rational factfinder could have believed also supports the verdict. Shortly after Vest ended the pursuit, and a short distance away, someone drove a small, blue, hatchback car onto Graham's business property. Upon investigation, Graham noted the car was damaged on its front passenger side. This

6

car was later proven to be the Mazda involved in Vest's pursuit. Graham saw a woman taking items out of the backseat and a man exiting the driver's side of the car. As the man exited the driver's seat and walked to the car's trunk, he passed within inches of Graham, who saw him clearly. Graham remembered the details of the event because it was so atypical. Graham then watched the man and woman leave the property on foot.

Within minutes, appellant and a woman were found hiding under a house a quarter of a mile away from Graham's facility. They were brought back to the facility and Graham identified appellant as the man he saw exiting the driver's side of the car.

That afternoon, some eight and a half hours after the pursuit, Vest saw appellant at a constable's station and identified him as the driver of the blue Mazda involved in the pursuit that morning.

To the extent inconsistencies existed among Vest's trial testimony and other evidence, such as the dispatch call log, the jury weighed and resolved those conflicts. *See Mosley*, 983 S.W.2d at 254; *Price*, 502 S.W.3d at 281; *Bradley*, 359 S.W.3d at 917. We resolve any evidentiary conflicts or inconsistencies in favor of the verdict. *See Wesbrook*, 29 S.W.3d at 111. Vest identified appellant as the Mazda's driver. Graham also identified appellant as the person who exited the driver's side of the Mazda after parking on Graham's business property.[1] Viewing all the evidence

---

[1] Appellant contends that Graham's testimony, and appellant's hiding under a nearby house, do no more than link him to the car and are legally insufficient to show he was the driver. Appellant's argument is not persuasive. Graham testified he saw appellant exit the driver's side of the car. Graham also testified he saw a woman on the passenger's side of the car, and no other person was in or around the car. That testimony is circumstantial evidence that appellant was driving the car. Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *See Hooper*, 214 S.W.3d at 13. Moreover, flight is circumstantial evidence of guilt. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994). A reasonable jury could

presented to the factfinder in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed the offense of evading arrest with a motor vehicle. *See Fabela v. State*, 431 S.W.3d 190, 194 (Tex. App.—Amarillo 2014, pet. dism'd) (finding legally sufficient evidence that defendant was driver who evaded arrest); *Greer v. State*, No. 05-01-01163-CR, 2002 WL 31388755, *3 (Tex. App.—Dallas Oct. 24, 2002, no pet.) (not designated for publication) (same). Accordingly, we hold that the evidence is sufficient to support appellant's conviction.

Relying principally on *Neil v. Biggers*, 409 U.S. 188 (1972), and its progeny, appellant argues Vest's pretrial identification of him as the Mazda's driver is too unreliable to support the jury's verdict. *Biggers* concerned the admissibility of an in-court identification when it was alleged that pretrial identification procedures were impermissibly suggestive, in violation of the defendant's due process rights under the Fourteenth Amendment. *See Biggers*, 409 U.S. at 194-99. The Supreme Court examined whether the suggestiveness of a pretrial identification procedure alone warranted exclusion of evidence that resulted from that procedure. *Id.* at 198-99. The Court articulated five non-exclusive factors trial courts should consider in deciding whether to exclude evidence resulting from a procedure the court has found to be impermissibly suggestive: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.* at 199-200. The issue was one of admissibility

---

rationally infer appellant fled the facility because he was guilty of evading arrest with a motor vehicle.

of a pretrial identification based on a suggestive procedure, not the weight to be afforded that identification once it is admitted into evidence. *See id.*

Appellant makes no such claim here. Appellant did not complain in the trial court about the procedure underlying Vest's pretrial identification. He did not file a pretrial motion to suppress the identification, nor did he object at trial to Vest's testimony regarding that identification. He has therefore waived any error concerning the admission of Vest's pretrial identification. *See Kelley v. State*, No. 14-15-00979-CR, __ S.W.3d __, 2017 WL 1103547, *3 (Tex. App.—Houston [14th Dist.] Mar. 23, 2017, pet. ref'd) (holding defendant waived challenge to in-court identification premised on pretrial identification in part because defendant "did not object to, or move to strike, or voice any complaint about the in-court identification evidence at any point in the trial court, including after the complainant's later testimony about the pretrial identification procedure"); *Mason v. State*, 416 S.W.3d 720, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (same); *cf. Aviles-Barroso v. State*, 477 S.W.3d 363, 379-80 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (reviewing denial of motion to suppress pretrial identification).

Appellant's reliance on *Biggers* is misplaced with respect to the issue he asserts on appeal, which is legal insufficiency of the evidence. Rather than challenge the admissibility of Vest's pretrial identification testimony, appellant superimposes the *Biggers* reliability and admissibility factors on his sufficiency analysis. He contends no rational jury could have found beyond a reasonable doubt that he was the driver of the Mazda because Vest (1) had little opportunity to see the driver during the pursuit; (2) had to focus on safety during the pursuit and could not pay enough attention to the driver's appearance; (3) first described appellant as Hispanic rather than African-American; and (4) did not identify appellant at the constable's station until more than eight hours after the pursuit. Appellant cites no case authority

supporting the notion that the *Biggers* factors control, or apply to, a legal sufficiency review of the evidence.[2]

Appellant was free to (and did) incorporate the *Biggers* factors into his trial strategy by emphasizing them on witness cross-examination and by arguing to the jury that it should consider the State's identification evidence unreliable. *Balderas v. State*, 517 S.W.3d 756, 791 (Tex. Crim. App. 2016) ("Generally, the Constitution protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting its introduction, but by affording the defendant the means to persuade the jury that the evidence should be discounted as unworthy of credit.") (citing *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012)). His lawyer thoroughly cross-examined Vest about the allegedly incorrect information in the call log and how his identification would be affected by an adrenaline surge. As the sole judge of witness credibility, the jury alone decided whether to believe eyewitness testimony and resolved any conflicts in the evidence. *See Mosley*, 983 S.W.2d at 254; *Price*, 502 S.W.3d at 281; *Bradley*, 359 S.W.3d at 917. We will not substitute our judgment for that of the jury. *See Williams*, 235 S.W.3d at 750.

## Conclusion

We overrule appellant's sole issue and affirm the trial court's judgment.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Boyce, Donovan, and Jewell.
Publish — TEX. R. APP. P. 47.2(b).

---

[2] At least one court of appeals has declined to apply the *Biggers* factors to a factual sufficiency review. *See Lagunas v. State*, 187 S.W.3d 503, 522 n.24 (Tex. App.—Austin 2005, pet. ref'd) (rejecting defendant's argument that *Biggers* "totality of the circumstances" standard should apply to factual sufficiency of the evidence).