**Affirmed and Memorandum Opinion filed July 16, 2019.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00179-CR

**JOHNATHAN GRAHAM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1549812**

## MEMORANDUM OPINION

Appellant Johnathan Graham appeals his conviction for the first-degree felony offense of aggravated robbery with a deadly weapon arguing (1) the trial court abused its discretion when it denied his motion for a mistrial; and (2) the evidence is legally insufficient to support his conviction. We affirm.

### BACKGROUND

Appellant was indicted for aggravated robbery with a deadly weapon in May

2017, and a three-day jury trial was held on February 27, 2018. At trial, Complainant testified she had financial difficulties and was about to be evicted from her apartment. She testified she met with several friends to borrow money on April 24, 2017. She also stopped at the bank and withdrew money from her daughter's account. Complainant had about $1,400 in her car but needed more money, so she waited for another friend to call her with information about a place where she could get another loan. After her friend called, Complainant drove to a shopping center and parked her car. She sat in her car with the windows down and called the number her friend gave her to inquire about getting a loan.

While she was on the phone, a man approached the passenger side of her car and told her to get out of her car. She turned around and looked at the man. The man held a gun "to the side of his face" and he covered a part of his face with his t-shirt. The gun was not obstructing his face but Complainant focused on his eyes; "there was something [i]n his eyes that ma[d]e [her] panic." The man instructed her to drop her phone and not look at him but she "couldn't stop staring." He again instructed her to get out her car. When Complainant exited the car, the man took her car and drove off; all her money was still in the car.

A passerby drove Complainant to a nearby gas station to call the police. Officer Jackson arrived at the gas station, and Complainant was still very distraught. She was not able to describe what her robber looked like. She only was able to tell Officer Jackson that the robber was a black "chubby" male who wore a white long-sleeve t-shirt.

Five days later, Officer D'Eugenio was on routine patrol and observed Complainant's car speeding in front of him. He "ran the license plate" on the computer in his police car and the "computer returned a caution stolen hit on the vehicle." Dispatch also informed Officer D'Eugenio that the car had been stolen

2

during an aggravated robbery. Officer D'Eugenio stopped the car, which was driven by Appellant. Appellant initially resisted Officer D'Eugenio's commands but then complied. Appellant was arrested at the scene and the car and a backpack inside the car were towed to an impound lot.

Police prepared a photo array containing Appellant's photo and photos from five other individuals. Officer Gamble, who was assigned to investigate the aggravated robbery, went to Complainant's residence to show her the photo array on May 3, 2017. Officer Gamble testified Complainant identified Appellant as her robber in the photo array. He stated: "Upon opening up the photo array, she immediately started crying, she started shaking. I was generally concerned. . . . She started crying and started shaking and she started just hitting the picture."

Complainant also identified Appellant at trial as the man who robbed her after Appellant took off his glasses.

After hearing the evidence presented, the jury found Appellant guilty as charged and sentenced him to 15 years' confinement. Appellant filed a timely appeal.

## ANALYSIS

### I. Sufficiency of the Evidence

Appellant argues in his second issue that the "evidence of identity is legally insufficient to sustain the verdict because no rational trier of fact could have found that appellant was the perpetrator of the aggravated robbery beyond a reasonable doubt given the complainant's questionable identification of appellant and appellant's alibi."[1]

---

[1] We first address Appellant's second issue because it challenges the sufficiency of the

3

When reviewing the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in its verdict. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017). The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The jury may credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Id*.

The jury may not draw conclusions based on speculation but may draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).

As applicable here, a person commits aggravated robbery if he commits

---

evidence and seeks rendition of a judgment of acquittal.

4

robbery as defined in Section 29.02 and he uses or exhibits a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2019). A firearm is a deadly weapon. *Id*. § 1.07(a)(17) (Vernon Supp. 2018). A person commits robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id*. § 29.02(a) (Vernon 2019). A person commits theft as defined in Chapter 31 when he unlawfully appropriates property with the intent to deprive the owner of the property. *Id*. § 31.03(a) (Vernon 2019).

Appellant contends the evidence is legally insufficient to support a finding he robbed Complainant because her identification of him was "questionable" and he had an alibi. In that regard, Appellant claims that Complainant told Officer Jackson she did not see her robber but then at trial "contradicted herself by stating that she did look at the perpetrator, but his face was covered."

Although Officer Jackson testified that Complainant told him "she was frightened to look up at [Appellant]" and "she didn't look at his face," Complainant at trial denied making such statements to Officer Jackson. Instead, Complainant testified she only told Officer Jackson "that I couldn't describe him. That's all I told him, that I couldn't — because he wanted me to tell him. I said I cannot describe [him]." In fact, Complainant testified she "couldn't stop staring" at Appellant even though Appellant told her not to look at him. Complainant testified she focused on the robber's eyes because he had covered his mouth and the tip of his nose with the shirt he wore. She even demonstrated for the jury how much of Appellant's face was covered.

Additionally, Complainant identified Appellant as her robber without hesitation only a few days after the robbery. She looked at a photo array and

immediately pointed to Appellant's photo. She testified she started crying, could not control herself, and "everything came back to me." Complainant testified she was 100 percent sure the man she picked in the photo array was her robber. Officer Gamble confirmed that Complainant immediately identified Appellant as her robber in the photo array. He testified that, "[u]pon opening up the photo array, she immediately started crying . . . and started shaking and she started just hitting the picture."

Complainant also identified Appellant as her robber at trial. Although she could not initially identify Appellant because he was wearing glasses in court, she positively identified him when he took off his glasses. Complainant testified that Appellant did not wear glasses when he robbed her.

In addition to Complainant's in-court and out-of-court identification of Appellant, evidence showed Appellant was driving Complainant's car when he was stopped by Officer D'Eugenio just a few days after the robbery.

Complainant's testimony alone is sufficient to support the jury's finding that Appellant was guilty of aggravated robbery. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (stating "the testimony of the eye witness alone was sufficient to support the jury's verdict" and upholding conviction for assault with intent to murder even though only one witness saw defendant with gun); *Jackson v. State*, 530 S.W.3d 738, 742 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("The testimony of a single eyewitness can be enough to support a conviction."); *Davis v. State*, 177 S.W.3d 355, 358-59 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (affirming conviction for aggravated robbery even though central issue involved credibility of single witness); *see also Jones v. State*, 234 S.W.3d 151, 156-57 (Tex. App.—San Antonio 2007, no pet.) (affirming conviction for aggravated robbery even though only one witness "identified [defendant] without hesitation from a six-

person photo array and also identified him at trial . . . [and] testified that despite the face covering worn by the gunman, she could still see his features."). Further, the jury as the sole factfinder determines how much weight and credibility to afford testimonial evidence. *Davis*, 177 S.W.3d at 359; *see also Young*, 358 S.W.3d at 801.

Appellant also contends the "evidence of identity is insufficient" because he had an alibi. At trial, Appellant's close friend, Bradley Taylor, testified that Appellant could not have robbed Complainant because Appellant worked for Taylor that day as a helper and rode with him in his truck to Ennis, Texas. The defense introduced a copy of Taylor's driver's log for April 24, 2017, which showed that Taylor drove to Ennis. The driver's log did not mention Appellant anywhere; and the space for the "Co-Driver's Name" was blank.

Despite Appellant's proffered alibi, the jury as the sole factfinder may credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Young*, 358 S.W.3d at 801. We also defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Isassi*, 330 S.W.3d at 638. Thus, viewing all of the evidence in the light most favorable to the verdict, we conclude that a jury, as the sole judge of the credibility of the witnesses, reasonably could have found the evidence was legally sufficient to establish beyond a reasonable doubt that Appellant was the person who committed aggravated robbery. *See Johnson*, 509 S.W.3d at 322; *Temple*, 390 S.W.3d at 360.

Accordingly, we overrule Appellant's second issue.

## II.    Mistrial Ruling

Appellant challenges in his first issue the trial court's denial of his motion for mistrial following Officer D'Eugenio's reference during his testimony to

Appellant's "Texas offenders card" because "it informed the jury that appellant had prior criminal history."

We review the denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Smith v. State*, 491 S.W.3d 864, 872 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).  A trial court does not abuse its discretion unless its decision falls outside the zone of reasonable disagreement.  *Archie*, 221 S.W.3d at 699; *Smith*, 491 S.W.3d at 872.

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.  *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error.  *Ladd*, 3 S.W.3d at 567.  "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."  *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  The determination of whether an error necessitates a mistrial must be made by examining the facts of each case.  *Ladd*, 3 S.W.3d at 567.

During direct examination, Officer D'Eugenio was asked how he identified Appellant after he stopped him driving Complainant's car.  Officer D'Eugenio testified as follows:

> [THE STATE:]  Did you, at any point, speak with the person who was driving the vehicle?
> [OFFICER D'EUGENIO:]  Yes.
> [THE STATE:]  Did you identify that person?
> [OFFICER D'EUGENIO:]  Yes, sir, I did.

8

[THE STATE:]  What was this person's name?

[OFFICER D'EUGENIO:]  Johnathan Graham.

[THE STATE:]  So, how did you identify him?

[OFFICER D'EUGENIO:]  I believe it was through a Texas offenders card or his driver's license.

[DEFENSE COUNSEL]:  Objection, Your Honor.  Prejudicial.

&ast;    &ast;    &ast;

[DEFENSE COUNSEL]:  Your Honor, this officer has clearly said in front of the jury that my client has a criminal history.  We are objecting to that.  We're asking for a mistrial.  He has now made it known to this jury through the State's questioning that my client has a criminal history.  He could have just said "ID card."

[THE STATE]:  He was trying to answer the question, Your Honor.  It was unintentional.  You can ask the jury to disregard.

[THE STATE]:  Specifically, also, he didn't say "criminal history," he said "offender card"; and whether the jury would understand that, it's an additional leap they would have to make.

THE COURT:  I'm going to sustain your objection.  Do you have any other requests?

[DEFENSE COUNSEL]:  I'd ask that you ask them to disregard, and I would ask that a mistrial be granted.

THE COURT:  All right.  I'll instruct the jury to disregard.  I'll deny your motion for a mistrial.

&ast;    &ast;    &ast;

THE COURT:  All right.  Ladies and gentlemen, I'm going to instruct you to disregard the last answer from the officer.

Unless clearly calculated to inflame the minds of the jury or of such damning character as to make it impossible to remove the harmful impression from the jurors' minds, a witness's reference to a defendant's criminal history or previous incarceration, standing alone, generally is cured by a prompt instruction to disregard. *See Ladd*, 3 S.W.3d at 571 (instruction to disregard cured witness's improper reference to defendant's multiple juvenile arrests); *Kemp v. State*, 846 S.W.2d 289,

9

308 (Tex. Crim. App. 1992) ("We find the uninvited and unembellished reference to appellant's prior incarceration—although inadmissible—was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard."); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992) (witness's statement that defendant "didn't want to go back to prison" cured by prompt instruction to disregard); *Gardner v. State*, 730 S.W.2d 675, 696-97 (Tex. Crim. App. 1987) (witness's statement that "[defendant] told me that even when he was in the penitentiary, that he had stomach problems" was cured by trial court's instruction to disregard); *Smith*, 491 S.W.3d at 872-73 (complainant's statement that defendant stayed at her house "when he got out of jail that last time that he had went" was a statement that is "typically cured by an instruction to disregard"); *Jackson v. State*, 287 S.W.3d 346, 354 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (complainant's two references to appellant's previous incarceration were cured by instruction to disregard). "[O]nly in the most egregious cases when there is an 'extremely inflammatory statement' is an instruction to disregard . . . considered an insufficient response by the trial court." *Williams v. State*, 417 S.W.3d 162, 176 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citations omitted).

This case does not involve circumstances under which the alleged harmful impression that Appellant had a prior criminal history could not be removed from the jurors' minds. Nothing in the record indicates that Officer D'Eugenio's reference to Appellant's Texas offender's card clearly was calculated to inflame the minds of the jury. *See Jackson*, 287 S.W.3d at 354. Officer D'Eugenio's reference to Appellant's offender's card (and implicitly to his prior criminal history) was uninvited and unembellished and more veiled and unnoticeable than those references typically cured by an instruction to disregard. *See Ladd*, 3 S.W.3d at 571; *Kemp*, 846 S.W.2d at 308; *Nobles*, 843 S.W.2d at 514; *Gardner*, 730 S.W.2d at 696-97;

10

*Jackson*, 287 S.W.3d at 354; *Smith*, 491 S.W.3d at 872-73. Because the trial court gave a prompt and appropriate curative instruction to the jury to disregard Officer D'Eugenio's inadvertent reference to Appellant's offender card, the trial court acted within its discretion when it denied Appellant's motion for mistrial.

We also note that Appellant's trial counsel nearly referenced Appellant's offender card during the questioning of Officer Gamble regarding how evidence found in Complainant's car after Appellant's arrest was tagged by asking the officer: "And certainly, you wouldn't want the complainant in a case who's having to make an identification to be able to have access to a suspect's offend — ID card, would you?" Additionally, we reject Appellant's contention that, "[g]iven the extremely weak evidence of the State's case, informing the jury that appellant had criminal history had a severe impact on the jury's verdict." Contrary to Appellant's assertion and as we have discussed above, the evidence supporting a finding that Appellant committed aggravated robbery was not "extremely weak."

Accordingly, we overrule Appellant's first issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    Meagan Hassan
       Justice

Panel consists of Justices Christopher, Hassan and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b).

11