

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00037-CR

———————————————

JESSE SMITH, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. F17-1280-431

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

In two issues, Jesse Smith appeals his conviction for aggravated assault against his wife. First, he challenges the sufficiency of the evidence. We hold that the evidence—including Wife's account of how Smith beat her with a baseball bat and the investigating officer's testimony and photographs documenting Wife's injuries—is sufficient to sustain the conviction.

Second, Smith contends that his motion to recuse the trial judge should have been granted. Smith's case for recusal rests entirely on the trial judge's harsh comments. We hold that these remarks do not rise to a level that requires recusal. We therefore affirm.

## I. BACKGROUND

On October 14, 2016, police were dispatched to address a report of family violence at Smith's apartment. Wife told police that Smith had hit her in the legs, arms, and stomach with a baseball bat. Smith was not at the scene, so police collected evidence and left.

On November 5, 2016, police arrested Smith, and he was later indicted for aggravated assault with a deadly weapon.[1] The jury found Smith guilty as charged, and Smith elected to have punishment tried to the bench. Smith pleaded true to an

---

[1]Smith was also charged with and convicted of violation of a protective order and another offense of aggravated assault with a deadly weapon for events that unfolded on November 19, 2016, but those convictions are at issue in separate appeals.

enhancement paragraph for a prior felony conviction. The trial judge assessed punishment at sixty years for the offense in question. Smith appeals.

## II.   SUFFICIENCY OF THE EVIDENCE

In his first issue, Smith disputes the sufficiency of the evidence. He contends the evidence is insufficient to show (1) that he was the person who assaulted Wife and (2) that the instrument used—a bat—was a deadly weapon.

In our evidentiary sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a

3

sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). Aggravated assault occurs if the person commits an assault under Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2).

The evidence at trial disclosed that the trouble began on October 13, 2016, when Wife and Smith got into an argument, and Smith left their apartment. Wife explained that Smith apologized when he returned the next day, but the argument soon resumed, and Smith began yelling and calling her names. Wife testified that Smith then went into the living room, and she heard her dog yelp "like she was hurt." According to Wife, Smith denied doing anything to the dog, but she saw blood on his hands. Wife explained that when she accused him of harming the dog, Smith flew into a rage and struck her repeatedly, first with his fists and then with a baseball bat:

> A. He got really mad and he came in the room and hit me in the head with the side of his fist a couple of times. And then he threw me down and kicked me, and picked me back up and hit me some more in the head. And then he made me sit on the bed. And I had to take my clothes off so I wouldn't run outside. And he was hitting me some more. And then he asked me—he got a baseball bat. And I was covering my face, because

4

> I was sitting on the bed, and he hit my hands with the bat and told me to stop doing that. And then he hit me on the side of the leg.
>
> Q. Was that with the bat?
>
> A. Yes. And kind of just taunting me, telling me he was going to knock out my teeth and hit me in the face and mess up my face. And he poked me like in the stomach and the legs with it, standing right there over me.

Wife testified that at some point, she reached for her tablet in an attempt to call for help, but Smith smashed it with the bat as well. Wife said that when he wasn't hitting her, Smith was threatening her, telling her that if she moved or tried to leave, he was going to knock her teeth out with the bat. Wife estimated that the whole "ordeal" lasted "[m]aybe an hour." In Wife's telling, Smith eventually calmed down, and after they talked for a while, Smith said he was going to take the dog for a walk. Wife testified that after Smith left, she went to her neighbor's apartment to call the police.

Zorah Krug, a 911 dispatcher, recalled that around 8:00 p.m. on the night of October 13, 2016, she received a call from a crying woman who reported that she had been assaulted. In a recording of the call, the woman identified herself and said that her husband Jesse Smith had hit her arms, legs, and chest with a bat.

Officer Jeffrey Pittman was dispatched to Smith's apartment. Officer Pittman testified that when he arrived, he found Wife crying and upset. According to Officer Pittman, Wife reported that Smith had punched her and tackled her to the ground, and he then retrieved a baseball bat and hit her in the legs, arms, and stomach. The officer photographed Wife's injuries, the smashed tablet, and the bat itself, which had blood

on the handle, and which he considered to be a deadly weapon. Smith was not at the scene, so Officer Pittman went back to the station to write his report.

Ashley Stratton, a paramedic, testified that she treated Wife at 8:17 p.m. on the night of the assault. According to Stratton, Wife reported that her husband had beaten her with a baseball bat, and she had bruising where the bat made contact. Stratton observed that Wife was "visibly upset and crying," and that parts of her body were swollen and red. By Stratton's account, she told Wife that x-rays were needed in order to know for sure whether any bones were fractured.

Officer Pittman testified that around 10:30 p.m. on the same night, he was again dispatched to Smith's apartment. According to Officer Pittman, Wife had called 911 to report that Smith was back and pounding on the apartment door. Officer Pittman testified that when he arrived, he searched the complex but could not find Smith.

Detective Scott Austin testified that he prepared probable cause affidavits for Smith's arrest. Smith was arrested on November 5, 2016. Detective Austin also agreed that a baseball bat is or can be a deadly weapon.

Smith also testified at trial, and he offered a very different recollection of events. Smith testified that on the night before the alleged assault, he slept on a couch in the couple's storage unit. Smith attested that the next day, he was in and out of the apartment, first visiting for breakfast and then to repair a fixture around noon. Smith took the dog to the park the around 4:00 p.m., he explained, though he left his wallet and phone behind at the apartment. According to Smith, he had car trouble as he was

6

driving home around dusk, and after a long walk back to the apartment, he arrived around 10:00 p.m. By Smith's account, Wife was angry when he got home and accused him of visiting another woman; Wife would not listen to reason, so he left, headed for the apartment complex's gym. Smith explained that he again slept in the couple's storage unit. He denied hitting Wife with a bat. According to Smith, Wife never mentioned that she had called police, and he was surprised when he was later arrested for aggravated assault. Smith explained that following his release, Wife apologized, explaining that she was furious when Smith stayed out late, so "she called the police to make a report to hurt me."

On appeal, Smith first challenges the sufficiency of the evidence to show identity, arguing that the evidence was insufficient to show beyond a reasonable doubt that he was the one who assaulted Wife. Smith contends that "no witness, including law enforcement, ever saw Appellant at the scene."

But Wife testified at length and identified him as the perpetrator. "[I]t is well-settled that the testimony of a sole witness to an offense may constitute sufficient evidence to support a conviction." *Hobdy v. State*, Nos. 02-18-00342-CR through 02-18-00347-CR, 2019 WL 3755781, at *8 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op., not designated for publication) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)); *Jackson v. State*, 530 S.W.3d 738, 742 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The record reveals no reason why the jury should have doubted this witness's testimony. Wife ascribed Smith with a plausible motive—animus

7

from recent fighting—and opportunity. Her testimony was consistent with similar narratives that she gave to the 911 dispatcher, police, and paramedics immediately after the assault and while still in turmoil. *See Beltran v. State*, No. 02-12-00193-CR, 2013 WL 2095776, at *1 (Tex. App.—Fort Worth May 16, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication) (holding the evidence sufficient because, *inter alia*, the abuse victim's trial testimony was consistent with multiple accounts she gave on the day of the assault); *see also Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref'd) (explaining that excited utterances, made while still under the influence of "emotion, excitement, fear, or pain" and before having the opportunity to fabricate, are generally regarded as "trustworthy"). Wife's testimony was also consistent with other objectively verifiable details in the case, such as the smashed tablet, the wounds to her arms and legs, and the fresh blood on the handle of the bat, each of which was photographed shortly after Wife contacted authorities. By contrast, Smith's version of events did not account for any of these details. And the jury might reasonably have been skeptical of certain aspects of Smith's story: Smith testified that during the time he was said to be assaulting Wife, he spent several hours alone at a park without his wallet and cell phone, only to have the car break down on the return trip, forcing him to walk home, which led Wife to believe that Smith was cheating on her and, in turn, to fabricate her accusations out of spite. The jury could have rationally believed that this alibi was an elaborate fiction meant to distance Smith from the apartment, Wife, and the truth itself. Deferring to the jury's resolution of the conflicting testimony, we

8

hold the evidence sufficient to prove the element of identity beyond a reasonable doubt. *See Queeman*, 520 S.W.3d at 622.

Next, Smith disputes the sufficiency of the evidence to support the jury's finding that he used or exhibited a deadly weapon during the commission of the assault. He contends that there is no evidence to show that the bat was a deadly weapon based on the manner in which he purportedly used it.

A "deadly weapon" is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) (quoting Tex. Penal Code Ann. § 1.07(a)(17)(B)). Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* (quoting Tex. Penal Code Ann. § 1.07(a)(46)).

A baseball bat is not a deadly weapon per se, but it may qualify as a deadly weapon through the manner of its use. *Hammons v. State*, 856 S.W.2d 797, 800 (Tex. App.—Fort Worth 1993, pet. ref'd); *Hughes v. State*, 739 S.W.2d 458, 459 (Tex. App.—San Antonio 1987, no pet.). In determining whether an object is a deadly weapon, a jury may consider (1) the physical proximity between the alleged victim and the object, (2) any threats or words used by the accused, (3) the size and shape of the object, (4) the potential of the object to inflict death or serious injury, and (5) the manner in which the accused allegedly used the object. *Kennedy v. State*, 402 S.W.3d 796, 802 (Tex. App.—Fort Worth 2013, pet. ref'd) (mem. op.). The presence and severity of wounds also may

9

be considered, but wounds are not a prerequisite to a finding of deadliness. *Hammons*, 856 S.W.2d at 800–01; *see Lane*, 151 S.W.3d at 191. No one factor is determinative, and an appellate court must examine each case on its own facts to determine whether the factfinder could have concluded from the surrounding circumstances that the object used was a deadly weapon. *In re S.B.*, 117 S.W.3d 443, 447 (Tex. App.—Fort Worth 2003, no pet.).

As to "the size and shape of the object," photographs depicted the bat as a long, rigid object with a green metal barrel. *See Kennedy*, 402 S.W.3d at 802. Based on the bat's physical characteristics and the testimony that an enraged man was wielding it, the jury could rationally infer that the bat carried at least some potential to inflict serious injury. Indeed, in past cases, we have found it self-evident that a man wielding a bat could inflict severe injuries: "we are inclined to believe that all mankind know that death or serious bodily injury can be inflicted by a baseball bat in the hands of a grown man." *Hammons*, 856 S.W.2d at 801. Regarding physical proximity, there was testimony that Smith struck Wife with the bat multiple times during an hour-long ordeal, so "the jury could rationally infer close proximity." *See Faircloth v. State*, No. 03-12-00133-CR, 2013 WL 2395194, at *5 (Tex. App.—Austin May 30, 2013, pet. ref'd) (mem. op., not designated for publication). Wife testified that when Smith wasn't hitting her with the bat, he was threatening to knock her teeth out with it:

Q. Okay. What's he doing when he is not [hitting you]?

A. Standing beside me with the bat, telling me what he's gonna do if I don't—if I try to move or try to leave, that he is gonna hit me with it and that he's gonna knock my teeth out and hit me in the head and like using it to like tap my head with it, like aiming.

*See Hatfield v. State*, 377 S.W.2d 647, 649 (Tex. Crim. App. 1964) (concluding that lost teeth were sufficient to show serious bodily injury). As for the "presence and severity of wounds," shortly after the assault took place, multiple witnesses observed Wife to be crying and visibly injured, with swelling, redness, bruising, and a bump on her forehead. *See Hammons*, 856 S.W.2d at 800–01. The potential for serious injury was further exemplified by the paramedic's recommendation that Wife should get x-rays to rule out broken bones. *See Shelby v. State*, 448 S.W.3d 431, 434 (Tex. Crim. App. 2014) (referring to "broken bones" in the arms and legs as "serious bodily injury" under the circumstances). And both Officer Pittman and Detective Austin expressly testified that in this case, the bat should be considered a deadly weapon. Viewed in the light most favorable to the jury's verdict, the cumulative force of this evidence would enable any rational factfinder to determine that Smith wielded a deadly weapon in assaulting Wife. *See Hammons*, 856 S.W.2d at 801 (considering the victim's "pain upon being struck, his fear of serious bodily injury, the menacing nature of the bat, the repeated blows inflicted" in upholding a deadly weapon finding).

Having found the evidence sufficient to support the only two elements challenged by Smith, we overrule Smith's first issue.[2]

### III. RECUSAL

In his second issue, Smith contends that the administrative judge abused his discretion by not recusing the trial judge, Jonathan Bailey. For the reasons set forth in our opinion regarding cause number 02-19-00035-CR, we disagree and overrule Smith's second issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 6, 2020

---

[2]In the alternative, Smith has argued that the evidence is insufficient to prove another form of aggravated assault: that the assault caused serious bodily injury to another. *See* Tex. Penal Code Ann. § 22.02(a)(1). We have already held that the evidence is sufficient to support a conviction for aggravated assault via the deadly weapon method, which renders it unnecessary to consider whether the State has also proved aggravated assault through the serious injury method. *See B.I. v. State*, No. 14-98-00697-CR, 1999 WL 718044, at *2 (Tex. App.—Houston [14th Dist.] Sept. 16, 1999, no pet.) (not designated for publication) (holding it unnecessary to consider whether the State proved serious bodily injury because the deadly weapon form of aggravated assault was already sufficiently proven by evidence concerning appellant's use of a baseball bat).